**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARVIN A. SICHERMAN, TRUSTEE,** | ) ) ) | **CASE NOS. 08 CV 2427** **08 CV 2428** |
| Plaintiff, | ) ) | **JUDGE PATRICIA A. GAUGHAN** |
| vs. | ) ) | |
| **DAVID M. WARBURG, *et al.*,** | ) ) | **Memorandum of Opinion and Order** |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon defendants' several Motions to Dismiss (Docs. 8, 10, 11). This case arises out of defendants' provision of legal, tax, auditing and accounting services to plaintiff. For the reasons that follow, the Motion to Dismiss filed by defendants David M. Warburg and Thelen LLP is GRANTED (Doc. 8). The Motion to Dismiss filed by Deloitte Touche Tohmatsu, a/k/a Deloitte Hong Kong, is GRANTED (Doc. 10). The Motion to Dismiss filed by Deloitte LLP, Deloitte & Touche LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP and Deloitte Tax LLP is GRANTED (Doc. 11).

**FACTS**

Plaintiff, Marvin A. Sicherman, is the Trustee in Bankruptcy for debtor Weida Communications, Inc. ("Weida USA").  Plaintiff brings this action against attorney David M. Warburg and Thelen LLP (collectively, the "Thelen Defendants"); Deloitte Touche Tohmatsu and "John Does (persons and entities) #1-99" (collectively, "Deloitte Hong Kong"); and Deloitte LLP, Deloitte & Touche LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP and Deloitte Tax LLP (collectively, "Deloitte USA" and, together with Deloitte Hong Kong, "Deloitte").[1]

Plaintiff's 75-page First Amended Complaint ("FAC") outlines a rather complex scenario.  Essentially, "company insiders" allegedly perpetrated "a fraud that cost the company [Weida USA] millions of dollars."  FAC at ¶ 5.

> The insiders' scheme involved creating the false appearance that Weida USA was acquiring and had acquired valuable rights to telecommunications technology in China (when, in truth, Weida USA did not actually acquire the rights to that technology and, in any event, the technology was not valuable) and to create the false appearance of an active and liquid market for Weida USA stock in order to inflate artificially the company's stock price so that they could sell their own shares before the truth came out and the stock price plummeted (commonly known as a "pump and dump" scheme).

*Id.* at ¶ 6 (emphases in original).

Plaintiff further alleges:

> It was the failure of Weida USA's outside attorneys and auditors to report material information to Weida USA's Board of Directors

---

[1] Deloitte & Touche LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP and Deloitte Tax LLP are subsidiaries of Deloitte LLP.

> and its Audit Committee - information that they knew or should
> have known was false, even from the inadequate due diligence
> that they conducted - as well as their active participation in some
> of the misconduct, that aided and abetted the insiders' efforts to
> provide a false air of legitimacy to the insiders' scheme and
> caused the company to spend millions of dollars pursuing and
> continuing to pursue transactions that actually had no value to the
> company.

*Id.* at ¶ 7.

At all relevant times, plaintiff engaged "Deloitte (Hong Kong) and Deloitte USA as its auditors and to provide the company tax, financial, and other business consulting services." Weida USA engaged "Deloitte" to conduct an audit of Weida USA's fiscal years 2004 and 2005 financial statements and to review Weida USA's 2005 interim financial statements.

Attorney Warburg and his firm were retained in or around 2004 "in all matters related to Weida USA's preparation and filing of public securities disclosures and a stock registration statement ... and in the preparation and use of a private placement memorandum ..."

The scheme involved two primary misdeeds. The first was mischaracterization of a contract entered into in 2002. Plaintiff entered into a contract to acquire a controlling interest in a Chinese company, which would permit plaintiff to do business in China. Plaintiff claims that defendants failed to inform the company that the contract never went into effect. The First Amended Complaint alleges that defendants recognized the illusory nature of the contract by September 2004. The contract was disclosed to the public in its entirety in plaintiff's August 2004 Securities and Exchange Commission Form 8-K filing. In October 2004, plaintiff's Chinese legal counsel delivered an opinion letter stating that the wholly-owned foreign entity had not yet commenced operations and was not providing any telecommunications services.

The second misdeed related to an infusion of cash from one of the insiders' other companies. This company, Glendora, lent money to plaintiff to permit plaintiff to pursue acquisition of a company that allegedly held telecommunications rights in China. Again, this transaction was initiated in 2002. However, no such telecommunications rights existed. This fact was publicly disclosed in plaintiff's Form 10-K filing in June 2004, which was signed by every member of plaintiff's Board of Directors.

Matters came to a head in November 2004 when Deloitte informed Warburg and plaintiff that it had serious concerns about plaintiff's accounting methods and that plaintiff's draft Form 10-Q statement could not be filed with the SEC in its current form. In response, plaintiff's Chief Executive Officer filed the Form 10-Q without Deloitte's approval.

Over the next few months, defendants repeatedly informed plaintiff's executives that the filing needed to be amended. Eventually, the full Board and Audit Committee were convened in March 2005 and these matters were discussed. An amended Form 10-Q, approved by Deloitte, was filed on April 7, 2005.

The scheme then "came to an abrupt halt" on April 25, 2005, when the SEC suspended trading in plaintiff's stock and charged several of plaintiff's executives with criminal fraud for "manipulating the market price of Weida USA's common stock at artificially inflated levels, by engaging in 'marking the close' transactions - a practice of executing the last transaction of the day for a security in order to affect its closing price." The indicted persons pled guilty and are now in jail. Deloitte resigned on May 31, 2005.

On March 29, 2006, plaintiff filed for bankruptcy protection. In its bankruptcy petition, plaintiff identified its potential legal claims against defendants as part of its assets.

On May 30, 2008, plaintiff initiated the present action.  The complaint was amended on August 7, 2008 to substitute defendant Deloitte Hong Kong for a different (and wrongly named) Deloitte entity.

Plaintiff's First Amended Complaint asserts seven causes of action.  Count I charges the Thelen Defendants with professional negligence (that is, attorney malpractice).  Count II alleges a breach of fiduciary duty by the Thelen Defendants.  Count III alleges fraudulent representation and concealment by the Thelen Defendants.  Count IV asserts a charge of professional negligence (accountant malpractice) against the Deloitte Defendants.  Count V alleges the Deloitte Defendants breached a fiduciary duty owed to plaintiff.  Count VI alleges fraudulent representation and concealment by the Deloitte Defendants.  Count VII purports to assert a claim for joint and several liability against all defendants.

Each defendant now moves to dismiss on various grounds.  The motions are opposed.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).  However, the complaint must contain "more than the bare assertion of legal conclusions."  *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops,*

*Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

### **DISCUSSION**

The Deloitte USA defendants make four primary arguments in support of dismissal: (1) the complaint fails to state a claim because it "indiscriminately attributes all alleged wrongful conduct to 'Deloitte' without ever specifying which firm committed which alleged act"; (2) plaintiff's claims are time-barred; (3) plaintiff's claims are barred by the doctrine of imputation in that Weida USA is deemed to possess the knowledge of its employees; and (4) plaintiff's claims are barred by the equitable doctrine of *in pari delicto* in that outside auditors cannot be held liable for wrongdoing where plaintiff is at least as culpable as defendants. Deloitte Hong Kong joins in these first two arguments. The Thelen Defendants simply urge application of the *in pari delicto* doctrine.

**I.    Choice of Law**

Each of plaintiff's causes of action arises under state law. A federal court sitting in diversity applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Ohio, courts look to the Restatement (Second) of Conflict of Laws (the "Restatement") for their choice of law analysis. *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 341-42 (1984). The Restatement counsels that the law of the forum with "the most significant relationship" should be applied. Restatement at § 145; *see also* Restatement at §§ 6, 148, 156-59.[2] In this case, as defendants argue, that forum is New York.

---

[2]

> Plaintiff urges this Court to apply a presumption that the law of the place of the injury controls. *Morgan v. Biro*, 15 Ohio St. 3d 339. Plaintiff was incorporated in Florida. That formal presumption applies only in personal injury torts. Restatement at § 146 ("In an action for a personal injury, the local law of the state where the injury

All defendants are located there and all alleged wrongdoing occurred there.  Thus, New York law will be applied to all substantive matters.  New York law will also be applied to the statute of limitations analysis.  Ohio Rev. Code § 2305.03 (stating that if a different state's substantive law applies and that sate has a shorter limitations period, the shorter period will be applied).

## II.     Statutes of Limitations

New York has a three year statute of limitations period for professional malpractice claims.  N.Y. C.P.L.R. §214(6).  The cause of action accrues when the malpractice is committed regardless of when plaintiff discovers the wrongdoing.  *Williamson v. PricewaterhouseCoopers LLP*, 872 N.E.2d 842, 845 (N.Y. 2007); *Ackerman v. Price Waterhouse*, 644 N.E.2d 1009, 1011-12 (N.Y. 1994).  This limitations period applies to plaintiff's other claims as well.  *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 663, 666 (S.D. N.Y. 2007) (fraud claim governed by shorter limitations period where fraud claim merely incidental to malpractice claim; three year limitations period applies to breach of fiduciary duty claim where money damages sought); *Daniels v. Lebit*, 749 N.Y.S.2d 149, 150 (N.Y. App. Div. 2002) (breach of contract, breach of fiduciary duty and fraudulent misrepresentation claims governed by three-year limitations period because duplicative of malpractice claim).

The First Amended Complaint alleges that Deloitte approved a revised Form 10-Q by

---

occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.").

April 7, 2005.  All wrongdoing ceased by April 25, 2005, at the latest.  The complaint was not filed until May 30,2008, more than three years later.  Plaintiff's argument that the limitations period should have been tolled as to Deloitte - based on alleged continuing misconduct by the Thelen Defendants - is unavailing.  The Court finds that the claims against Deloitte USA and Deloitte Hong Kong are time-barred.[3]

### III.      In Pari Delicto

The Thelen Defendants argue that even if the allegations in plaintiff's complaint are true, they cannot be held liable because plaintiff's insiders were the primary masterminds behind the scheme.

"*In pari delicto*" means "in equal fault."  *Pinter v. Dahl*, 486 U.S. 622, 632 (1988). The equitable doctrine prevents a party from recovering for its own wrongful acts, because no court will lend aid to one who acted illegally itself.  *Id.*  The defense applies when the plaintiff bears at least substantially equal responsibility for his injury and the parties' culpability arises out of the same illegal act**.**  *Id.*  The doctrine may be applied so long as doing so will not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.  *Id.*

Here, plaintiff's complaint is replete with references to wrongdoing by its CEO, CFO and largest shareholders.  These individuals are repeatedly referred to as the "ringleaders" of the fraud.  Defendants merely offered "support" to the insiders.  The facts alleged in the

---

[3]
> For the reasons stated in the Deloitte Defendants' briefs, the result is the same under Florida law (which has a two year limitations period). Plaintiff knew of its claims by March 29, 2006, at the latest - the date plaintiff identified its claims in its bankruptcy petition.  This was more than two years before plaintiff initiated the present suit.

complaint clearly indicate that plaintiff was at least equally to blame for the scheme. Moreover, the wrongdoers are all now in jail, having been convicted of securities fraud. Thus, dismissal as to the Thelen Defendants is appropriate. *Terlecky v. Hurd* (*In re Dublin Sec.*), 133 F.3d 377 (6th Cir. 1997) (disposal of case on motion to dismiss appropriate where complaint adequately alleged plaintiff was at fault).[4]

This rationale applies equally to the Deloitte USA Defendants, who also moved to dismiss on this ground.

Because the foregoing analyses dispose of all of plaintiff's claims, the Court declines to address defendants' myriad alternative arguments.

**CONCLUSION**

For the reasons stated above, defendants' Motions to Dismiss is GRANTED.

IT IS SO ORDERED.

   /s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Date:   4/07/09

---

[4] The Court also finds that the "adverse interest" exception cannot apply.  Plaintiff's complaint alleges that the insiders were acting on behalf of both themselves and the company.  There is no allegation that their interests were wholly adverse to the company's and, so, the exception does not apply.